## In re PAINE.

(District Court, W. D. Kentucky. January 23, 1904.)

**1. BANKRUPTCY — DISCHARGE—CONCEALMENT OF ASSETS—APPLICATION TO RE-OPEN CASE—TIME.**

An application to reopen a bankruptcy proceeding on the ground that it was closed before the estate was fully administered, as authorized by Bankr. Act July 1, 1898, c. 541, § 2, cl. 8, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], on the discovery of assets alleged to have been concealed by the bankrupt, must be made within a reasonable time, at the discretion of the court on consideration of all the circumstances of the case.

**2. SAME—SUITS BY TRUSTEE.**

An application by a trustee in bankruptcy to open the proceeding on the ground that it had been closed before the estate had been fully administered is not a "suit," within Bankr. Act July 1, 1898, c. 541, § 11d, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], providing that suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate is closed.

**3. SAME—RIGHTS OF TRUSTEE.**

Where a bankrupt's estate has been closed and the bankrupt discharged, the former trustee's office is thereby terminated, and he has no standing to apply to have the estate reopened as not fully administered.

**4. SAME—RIGHTS OF CREDITORS—PROOF OF CLAIM.**

Where, in a bankruptcy proceeding, the proof of the debt of a creditor was tendered and filed in the office of the clerk of the court after the case was closed in the referee's office, but before the bankrupt was discharged, and remained in that condition without ever being formally allowed by the court or referee, there being no assets applicable to creditors, such proof was prima facie sufficient to entitle the creditor to apply to have the estate reopened on the ground that the bankrupt had fraudulently concealed assets applicable to creditors.

**5. SAME.**

Where claims of creditors were not proved within the time required by Bankr. Act, July 1, 1898, c. 541, § 57, cl. "n," 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444], such creditors had no standing to apply to have the bankrupt's estate reopened on the ground that he had fraudulently concealed assets applicable to creditors.

**6. SAME—EVIDENCE.**

A bankrupt's father died October 19, 1899, and by his will, which was probated October 23d, he left to the bankrupt the income of a trust fund valued at $7,600. The bankrupt transferred his interest in the fund to O. on October 27th, having received from the latter a loan of not to exceed $1,000. A bankruptcy petition was filed November 3, 1899, and a discharge granted February 10, 1900, after which O. transferred the trust fund to the bankrupt's wife in consideration of $300, which was the balance due to O. from her husband on the loan, and this amount was raised by mortgaging the bankrupt's homestead, which was devised to him for life by his father. *Held*, that such facts warranted the granting of a petition to reopen the case on the ground that his failure to disclose such trust fund in his schedules amounted to a fraudulent concealment of the assets.

In Bankruptcy.

D. I. Heyman and Menefee Wirgman, for petitioners.
Samuel Avritt, for bankrupt.

EVANS, District Judge. The bankrupt filed his voluntary petition on November 3, 1899. On the next succeeding day he was adjudi-

cated a bankrupt accordingly. His schedules included the names of W. P. Adams and the Western Bank among his creditors. All the assets described in his schedules, including a life estate in certain lands devised to him by the fourth item of his father's will, were claimed as exempt under the Kentucky law. The interest thus devised, and the land to which it applied, were clearly described in the schedules, and in doing so express reference was made to the fourth item of the will. Claude W. Johnson in due course was appointed trustee. He allowed the exemptions claimed by the bankrupt, and all the scheduled assets were accordingly yielded to the bankrupt as exempt. Nothing was left for creditors. And though the bankrupt's liabilities were scheduled at over $20,000, none of the creditors filed proofs of debt, except John Broderick for $244.67, and the Western Bank for $272.79. The referee closed the case in his office, and discharged the trustee from his trust by an order to that effect on December 16, 1899. On February 10, 1900, the bankrupt was discharged, and the case was closed by the court. No restraining order having been made, the Western Bank, early in January, 1900, obtained a judgment in the state court in a suit pending therein upon the debt proved in this proceeding, and also upon another debt which was not proved herein, though this latter fact is not very material, as the judgment was rendered, and the claim on which it was based was created, before the discharge of the bankrupt. The status remained thus until the 21st day of November, 1903, when Claude W. Johnson, formerly trustee, and the Western Bank, filed a petition praying that the case might be reopened. On December 12, 1903, W. P. Adams was permitted, on his petition for that purpose, to join in the prayer for reopening the case. Adams, however, has never made proof of his debt, though named as a creditor in the bankrupt's schedules. The ground upon which the prayer for reopening the case was made is, in substance, that the bankrupt fraudulently omitted from his schedule, and concealed from his creditors, a life interest which he had, under the fifth item of his father's will, to the income from something like $7,500, which had been placed by the terms of the will in the hands of the Louisville Trust Company as trustee. No reference whatever to the interest thus held in trust is made by the bankrupt in his schedules. He, however, insisted in his response that he had, previously to filing his petition in bankruptcy, sold in good faith and transferred that interest to one Louis Oberdorfer, who in turn, shortly after the bankrupt's discharge, had sold it to the bankrupt's wife. The matter was referred to the referee to take proof upon the issues thus raised, and to report his conclusions thereon. He has made his report to the effect that the bankrupt did conceal his interest in the trust fund created under the fifth item of his father's will, and had undertaken to cover up that interest by a secret and collusive transfer thereof, and, furthermore, that the petitioning creditors had no knowledge of this transfer until about the time the petition for the reopening of the case was filed. The referee further reported that it might be possible that the will of the bankrupt's father, admitted to probate in 1899, was avoided by his second marriage at a date subsequent to the making of the will; but, as all

this part of the report is pertinent to no issue in the case as made by the pleadings seeking to have it reopened, the same will be disregarded, and the exceptions thereto will be sustained. Other exceptions to the report have also been filed.

Section 2, cl. 8, Bankr. Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], gives to the District Courts jurisdiction to "close estates whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and re-open them whenever it appears that they were closed before being fully administered." The power to reopen a case is given in one contingency only, namely, when it appears that the case was closed before being fully administered. No time is fixed within which this may be done. Something is doubtless left to the sound discretion of the court, upon a consideration of all the circumstances surrounding each case. It would not be supposed that the court would as readily reopen a case where the creditors knew all the facts and slept on their rights, as where the concealment of assets was not only artful, but was unknown to the creditors, and not discovered by them for a long period. I take the proper rule to be that a fairly reasonable time under all the circumstances of a case should be allowed, and that, if the parties who had full knowledge delayed an unreasonable time to seek to reopen a case, their laches would authorize the court to refuse to do so. But neither the statute nor judicial discretion dictates any hard and fast rule in the premises. It is, however, contended by the bankrupt that section 11d of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], presents a bar to this proceeding. The language is this: "Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." I think it clear enough that this proceeding to reopen this case is not a "suit" within the provision just copied. That provision manifestly refers to other matters, and not to a mere application to the court to reopen a case. The bankruptcy act furnishes much evidence of its purpose to require the winding up of estates as speedily as possible, but no intent can be gathered from any of its provisions that a bankrupt should be benefited by a delay which results entirely from his own wrong—from his own artful attempt to cover up his assets. On the contrary, such an attempt, if made by a bankrupt, may be criminally punished. There is, therefore, small merit in a plea coming from a bankrupt that his creditors have been guilty of delay. Indeed, if a bankrupt has honestly surrendered all of his assets to the trustee, he seems to have no interest in the question of reopening the case.

Upon the face of the papers, as they appeared in February, 1900, the assets had been fully administered. It now seems at least to be probable that they had not in fact been administered fully, though it would be premature to decide, on the present issues as between the present parties, that in fact the transfer from the bankrupt to Oberdorfer, and from the latter to the bankrupt's wife, were either actually or constructively fraudulent as to creditors. But if the court must carry the above clause of the bankrupt act into effect under the prompt-

ing of a sound discretion, it would seem to be clear enough that it is at least probable that in a plenary suit to which Oberdorfer and Mrs. Paine were made parties it might be adjudged that the transfers were fraudulent, or at least that there was never more than a pledge of the estate to secure a loan, and, if so, that the bankrupt still had an interest in the trust fund created by the fifth item of his father's will. Certain facts may, in this connection, be very suggestive. The bankrupt's father died October 19, 1899; his will was admitted to probate October 23, 1899; the transfer to Oberdorfer was made October 27, 1899; the petition in bankruptcy was filed November 3, 1899; the discharge was granted and the case closed on February 10, 1900; and Oberdorfer made the transfer to Mrs. Paine on July 31, 1900. The trust fund, including real and personal estate, the income of which was to be paid to the bankrupt, is valued at $7,600, and the income therefrom was at least $400 per annum; but Oberdorfer loaned to the bankrupt not over $1,000 upon it, and Mrs. Paine paid Oberdorfer only $300 as the consideration of the transfer to her, and this sum seems to have been the balance due to Oberdorfer from her husband on loans made to him, and was raised by mortgaging his homestead, namely, the land devised to him for life by his father. Upon the life tables the interest of the bankrupt in the trust fund would be valued at, at least, $4,500. I repeat that these things furnish sufficient ground for supposing it probable that in a plenary suit the alleged sale or sales referred to would be adjudged fraudulent and collusive as to creditors, or at least nothing more than pledges to secure loans. Such a probability is sufficient to move the discretion of the court in the direction of granting the relief now prayed for, namely, the reopening of the case, in order that the questions suggested and the character of the transfers may be passed upon in a plenary suit to which Oberdorfer and Mrs. Paine shall be parties. If this were all, an order to that effect might be at once granted, but other considerations should be noted.

1. Claude W. Johnson is not a trustee herein, and has not been since the case was closed. He was discharged from the trust about four years ago. His trusteeship is functus officio, and he, as a mere former trustee, has no standing in court to seek a reopening of the case. I conclude that none but creditors have a right to that relief.

2. W. P. Adams has never proved his debt at all, and, upon grounds presently to be noted, he can never do so. He, therefore, has no right to a reopening of the case. As he can never prove his debt, the reopening of the case, so far as he is concerned, would be an idle and vain thing. The same remark applies to all other creditors similarly situated.

3. Only John Broderick and the Western Bank, to the extent indicated, have proved their debts. Broderick does not join in the petition for a reopening of the case, but if that relief is granted it will of course inure to his benefit. It should be stated that the proof of debt made by the Western Bank was tendered and filed in the clerk's office of the court after the case was closed in the referee's office, but before the discharge was granted. It remained in that condition, and

was never allowed formally by the court or the referee, but I have assumed that this was a proof of debt prima facie sufficient for the present proceeding, though I have not finally so determined. There may be some question under the Act upon that point.

4. Section 57, cl. "n" (30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]), is as follows:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment: provided, that the right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer."

It may well be that Congress could with wisdom have put into the clause an exception covering cases where there had been a fraudulent concealment of assets; but that was a matter exclusively for Congress to determine, and not for the courts to remedy. This court at least assumes no power to interpolate an exception, and thus put into the statute what Congress declined to embrace therein.

The language of the clause is plain and unequivocal. There is no ambiguity about it, and it admits of no construction. The decisions are equally clear to the effect that no proof of debt can be made after the expiration of one year after the adjudication, except in those instances where the period is extended by the act to not exceeding one year and six months. Either period would effectively bar the making of any proofs of debt in this case by any creditor whatever. In re Hawk, 114 Fed. 916, 52 C. C. A. 536; In re Rhodes (D. C.) 105 Fed. 231; In re Leibowitz (D. C.) 108 Fed. 617. This narrows matters down to a small compass, namely, to the two claims proved against the estate.

5. As already indicated, the petitioners who ask for a reopening of the case base their claim upon the sole ground that the bankrupt, in making his schedules, concealed an estate given him by the fifth item of his father's will, and I think they must be confined to that contention. They have asserted no claim that the will is invalid, and no issue relative to that subject arises on the pleadings, even if it be assumed that this court is not bound by the judgment of the state court which has jurisdiction over the probate of wills, and which more than four years ago admitted this will to probate, and which judgment has been acquiesced in by all parties. At all events, this case will be reopened for the sole purpose of enabling any trustee of the bankrupt to litigate the question of his right to recover such an amount of the trust fund as may be necessary to pay the two demands supposed to be entitled to share therein. It is possible that the reopening of the case may be avoided if an amount sufficient to pay those debts, interest thereon, and costs should be deposited in the registry of the court under fair conditions as to the settlement of the rights of all parties therein, including Mrs. Paine.

Upon a very careful consideration of the subject in all its phases, I have concluded that the petitions of Claude W. Johnson and W. P.

Adams should be dismissed, as neither of them has any standing to claim the relief sought, and cannot possibly have any share in the assets.

John Broderick has not joined in the petition, but, as he seasonably proved his debt, any relief now granted would necessarily inure to his benefit, as he would be entitled to share in any fund realized as assets of the bankrupt.

Unless I am in error in treating the proof of debt of the Western Bank as prima facie sufficient to entitle it to ask for the reopening of the case, then its prayer for that relief should be granted, but any judgment reopening the case should limit the right of the trustee of the bankrupt to seeking to subject so much only of the trust estate as may be necessary to pay the two debts referred to, interest thereon, and the proper costs of this proceeding. Even if the bank's debt is not properly proved and allowed, I am still inclined to think that the case ought to be reopened for the benefit of John Broderick, and the clerk will be directed to notify him of the present status of this proceeding.

It may be that the bankrupt should be allowed the option of paying into court, for the purposes indicated, an amount sufficient to meet those purposes, and, if he should choose to do so, the judgment may provide for a reservation of his rights and those of Mrs. Paine to raise the question of whether the debt of the Western Bank has been properly proved and allowed in the legal sense, and whether the transfers to Oberdorfer and Mrs. Paine were, or whether either of them was, fraudulent as to the creditors of the bankrupt, or should be held to be mere pledges to secure loans.

The eighth and tenth exceptions filed by the bankrupt to the referee's report are sustained, because the findings referred to therein are not pertinent to any issue raised by the pleadings, nor responsive to the order of reference. All the other exceptions are overruled.