Richard J. WHITE and Judith E. White, Appellants,

v.

Richard E. BOSTON, Appellee.

In re Richard J. WHITE and Judith E. White, Debtors.

No. IP 88–970–C.
Bankruptcy No. IP 84–4830 R.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 31, 1989.

Sigmund J. Beck, John M. Rogers, Bamberger & Feibleman, Indianapolis, for appellants.

William J. Tucker, Klineman, Rose, Wolf and Wallack, Indianapolis, for appellee.

### ENTRY

BARKER, District Judge.

■ The appellant-debtors in this case, Richard and Judith White, seek to overturn a bankruptcy judge's decision to reopen their estate for further administration. The principal issues before this court are whether the trustee has standing to petition for reopening, and whether the action is barred by the Bankruptcy Code's statute of limitation. Because these are questions of law, they are subject to *de novo* review by this court on appeal. *Matter of Evanston Motor Co., Inc.*, 735 F.2d 1029 (7th Cir.1984); *In re Sanderfoot*, 92 B.R. 802 (E.D.Wisc.1988); *In re Cricker*, 46 B.R. 229 (N.D.Ind.1985).

For the reasons stated below, the bankruptcy court is affirmed with respect to the trustee's standing, and the case is remanded to determine whether the trustee can adduce sufficient evidence to justify reopening the debtors' estate.

*Background*

The debtors filed a joint Chapter 7 petition on December 20, 1984, and a trustee was appointed the same day. After evaluating the debtors' petition and schedule of assets and liabilities, the trustee filed a report of No Distribution on March 5, 1985, and the debtors received a discharge on May 28, 1985. On May 10, 1988—nearly three years after the debtors were discharged—the trustee moved to reopen the estate for the purpose of administering assets that were not listed in the debtors' schedules. Specifically, the trustee seeks to void an undisclosed third mortgage on the debtors' home, and to administer "[o]ther tangible and intangible personal property not previously disclosed by Debtor." Trustee's Report of Possible Assets and Application to Reopen Estate, p. 2 (the "Report").

The bankruptcy court granted the petition to reopen on May 11, 1988; the debtors moved to set aside the order to reopen, and a hearing on the debtors' motion was held on July 12, 1988. At the hearing the court concluded that the trustee had valid reasons to reopen the estate (Transcript of Hearing, p. 10), and denied the debtors' motion.[1]

The debtors appeal this ruling on several grounds. First, they contend that the trustee lacks standing to petition for reopening. Second, they argue that the bankruptcy court abused its discretionary power in reopening the estate, because the trustee's intended voiding actions are barred by the statute of limitations, and because the property the trustee seeks to administer is valueless. Finally, the debtors assert that the trustee's motions to reopen should be barred by the equitable doctrine of laches.

*Discussion*
#### A. Trustee Standing

■ Section 350(b) of the Bankruptcy Code, Title 11 U.S.C., empowers a bank-

---

1. In determining that the trustee was justified in seeking a reopening, the court relied on the trustee's Report and on the district court records of a pending criminal action against the debtors (*See United States v. White (Judith and Richard White)*, 879 F.2d 1509 (7th Cir.1989), wherein the court reversed the conviction of Judith White with direction to acquit, and remanded the conviction of Richard White for further proceedings) of which he took judicial notice. (Transcript at p. 10).

ruptcy court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." Rule 5010, Rules of Bankruptcy Procedure, provides that a case may be reopened "on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." The debtors assert that the trustee is not a "party in interest" within the meaning of Rule 5010, and thus lacks standing to petition for reopening.

Debtors rely upon *In re Ayoub*, 72 B.R. 808 (Bankr.M.D.Fla.1987) and *Matter of Paine*, 127 F. 246 (W.D.Ky.1904) (construing section 2 cl. 8 of the 1898 Bankruptcy Act, 30 Stat. 546, the statutory predecessor of section 350(b)) for the proposition that trustees lack standing to reopen. These cases essentially hold that after an estate has been closed, the trustee has no cognizable interest because he is a *former* trustee whose rights and duties ended at the time of closing. *In re Ayoub*, 72 B.R. at 812, *Matter of Paine*, 127 F. at 249. The court finds this reasoning unpersuasive.

First, the argument is overly formalistic. Followed to its logical conclusion, it would also preclude creditors from seeking a reopening to administer undisclosed assets on the grounds that they would merely be *former* creditors. Moreover, it is established case law that a trustee's powers are terminated only when the estate has been *properly* closed.[2] It would be incongruous to permit a debtor who has failed to disclose assets to use this failure (and the subsequent erroneous closing) as a shield against reopening. The distinction between a "trustee" and a "former trustee" urged by the debtors is semantic rather than substantive, and does not effect a talismanic change in the trustee's legal status. Therefore, the mere closing of an estate cannot in of itself prohibit trustee standing.

Second, there is no indication in the legislative history that Rule 5010's "party in interest" was intended to exclude trustees. The superceded Rule 515 permitted any "other person" to move for reopening. The court in *In re Stanke* did not find this substitution of phrases to work a substantial change in the rules on reopening, nor does this court. The trustee not only comes within the "other person" language of former Rule 515, but he is also the "natural person to hold and to exercise the power to reopen if his duty is unfinished." *In re Stanke*, 41 B.R. at 381.[3]

Third, other bankruptcy rules indicate that the phrase "party in interest" encompasses trustees. Rules 2002(a) and (b) specifically define "parties in interest" to include "the debtor, the *trustee*, all creditors and indenture trustees...." (Emphasis added). Similarly, a trustee must be within the ambit of "party in interest" in section 4004(b), which permits interested parties an extention of time to object to a discharge, because section 727(c)(1) expressly autho-

---

**2.** In *Bilafsky v. Abraham*, 183 Mass. 401, 402, 67 N.E. 318, 319 (1903), the Supreme Judicial Court of Massachusetts analyzed the statute of limitation to the 1898 Bankruptcy Act, 11 U.S.C. § 11(d), which provided that suits by or against a trustee could not be brought "subsequent to two years after the estate has been closed." The court held that "closed" meant "properly and finally closed," and that the prior closing—which did not fully administer the estate's property—was erroneous and thus could not bar a reopening. *Id.* 67 N.E. at 319. Other courts have similarly construed the word "closed" in the bankruptcy context. *See In re Petty* 93 B.R. 208, 210 (9th Cir.B.A.P.1988); *In re Ward*, 60 B.R. 660, 663 (Bankr.W.D.La.1986); *In re Stanke*, 41 B.R. 379, 381 (Bankr.W.D.Mo.1984); *In re Alt*, 39 B.R. 902, 903–04 (Bankr.W.D.Wisc. 1984). *See also 4 Collier on Bankruptcy* § 546.02 (15th ed. 1988).

**3.** The debtors contend that construing "party in interest" to include "former" trustees would be inconsistent with Rule 5010. The proper inquiry, however, is whether such an interpretation is consistent with section 350(b). While it is true that the Rules were intended to govern the "[m]echanics of reopening a case," H.R.Rep. No. 595, 95th Cong., 2d Sess. 293–94, *reprinted in* 1978 U.S.Code Cong. & Admin. News, 5787, 6250–51, it must be remembered that the Rule cannot "abridge, enlarge, or modify" any substantive provision of the Bankruptcy Code. 28 U.S.C. § 2075 (Bankruptcy Rules Enabling Act). To the extent a Rule contradicts a statute, the Rule is invalid. This court declines to interpret Rule 5010's "other party in interest" to exclude trustees, because finding a trustee to be a party in interest comports with section 350(b), and because the debtor's interpretation unduly restricts a bankruptcy court's power to reopen cases "for other cause" under section 350(b). *Cf. In re Searles*, 70 B.R. 266, 271 (D.R.I.1987).

rizes trustees to file such complaints. 11 U.S.C. § 727(c)(1).

Finally, it should be noted that several courts, construing both the present Bankruptcy Code and the prior Bankruptcy Act of 1898, have ruled either expressly (*In re Stanke*, 41 B.R. at 381; *Brangan v. United States*, 373 F.Supp. 1050, 1052 (E.D.Va. 1973)) or implicitly (*In re Candor Diamond Corp.*, 76 B.R. 342 (Bankr.S.D.N.Y. 1987); *In re Butcher*, 72 B.R. 247 (Bankr. E.D.Tenn.1987); *In re Penland*, 34 B.R. 536 (Bankr.E.D.Tenn.1983)) that trustees have standing to move for reopening. Indeed, some courts have suggested that bankruptcy courts have discretionary power to reopen estates *sua sponte* pursuant to section 350(b) (or its predecessor statute 11 U.S.C. § 11(a)(8)) as long as the existence of unadministered assets is brought to its attention in some competent manner, regardless of the source of the information. *See In re Thomas*, 204 F.2d 788, 791 (7th Cir.1953); *In re Joslyn's Estate*, 171 F.2d 159, 164 (7th Cir.1949); *In re Searles*, 70 B.R. 266 (D.R.I.1987). *See also In re Mullendore*, 741 F.2d 306, 308 (10th Cir.1984); *Schofield v. Moriyama*, 24 F.2d 473, 474 (9th Cir.1928). Although the issue of whether a bankruptcy court can reopen an estate *sua sponte* is not before this court, these cases clearly support the proposition that a trustee could be the source of the information justifying a reopening.

For the reasons stated above, this court finds that the bankruptcy court did not abuse its broad discretionary power[4] to reopen the case. The court holds that the trustee is a "party in interest" within the meaning of Rule 5010, and thus is a proper party to move for a reopening.

### B. *Statute of Limitations*

■ Debtors' second argument is that the statute of limitations in section 546(a) bars the trustee from exercising any powers, and that consequently the bankruptcy court abused its discretion in ordering a reopening. Section 546(a) provides that

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) Two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) The time the case is closed or dismissed.

The trustee admittedly seeks to void a mortgage on the debtors' home,[5] and was appointed almost three years before moving to reopen. Furthermore, the debtors' estate was closed three years before trustee's motion. Under the plain language of section 546(a), the trustee's motion appears to be barred.

■ From the discussion above, however, it is clear that the closing of a case cannot trigger section 546(a)(2) unless the case has been *properly* closed, *i.e.*, the assets fully administered.[6] In the present case, previously undisclosed assets have been alleged. To permit an erroneous closing to bar reopening would allow the debtors to profit from their own misconduct. Moreover, there seems to be some consensus that section 546(a)(2) was written without considering the possibility that a closed case could subsequently be reopened. *In re Stanke*, 41 B.R. at 381; 4 *Collier on Bankruptcy* § 546.02[2] (15th ed.). For these reasons the court finds that the trustee's motion was not barred by section 546(a)(2).

Whether the trustee's motion should be denied because it was brought more than two years after the trustee was appointed presents a more difficult question. The erroneous prior closing is irrelevant to this inquiry, because the two year limitations prescribed by section 546(a)(1) would bar the trustee's action "even if the case ha[d] never been closed." *In re Petty*, 93 B.R.

---

4. *See In re Young*, 70 B.R. 968, 969 (Bankr.E.D. Pa.1987); *In re Searles*, 70 B.R. 266 (D.R.I.1987).

5. It is unclear from the record whether the trustee seeks to exercise section 544 or section 547 voiding powers, but each is covered by section 546.

6. Section 350(a) permits a court to close a case only after it has been "fully administered." 11 U.S.C. § 350(a).

208, 212 (9th Cir. BAP 1988); *In re Stanke,* 41 B.R. at 381; *Matter of Burstein-Applebee,* 30 B.R. 779, 780–81 (Bankr.W.D.Mo. 1983) 4 *Collier on Bankruptcy* § 546.02[2] (15th ed.). Relying upon the plain language of the statute, courts have refused requests by successor trustees for additional time to bring actions, even where the debtor has "traipsed through the various chapters of the Code," *In re Sandra Cotton, Inc.,* 92 B.R. 595, 597 (Bankr.W.D.N. Y.1988), and the successor trustee's duties and functions differed substantially from those of the prior trustee whose appointment triggered the statute of limitations. *See In re Missouri River Sand & Gravel, Inc.,* 88 B.R. 1006, 1012 (Bankr.D.N.D. 1988); *In re Chequers, Ltd.,* 59 B.R. 177 (Bankr.W.D.Pa.1986). Conversely, other courts have relied upon equitable policy reasons to extend the limitations period for successor trustees, principally because of the different objectives a trustee would pursue under different chapters of the Bankruptcy Code. *See In re Grambling,* 85 B.R. 675, 677 (Bankr.D.Conn.1988); *In re Moody,* 77 B.R. 566, 573–74 (S.D.Tex. 1987); *In re Afco Development Corp.,* 65 B.R. 781, 786–89 (Bankr.D. Utah 1986). Because the applicability of section 546(a)(1) to successor trustees is not before this court, it suffices to note that the courts are split between reliance upon the plain meaning of the statute and notions of equity.

■ The equitable notion most pertinent to this case, though mentioned by neither of the parties, is the federal equitable tolling doctrine. This doctrine finds its roots in *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), where a trustee sued to avoid a fraudulent transfer by the bankrupt. The bankrupt argued that the suit was barred by the limitations period prescribed by section 2 of the 1867 Bankruptcy Act. The Supreme Court disagreed. Noting that statutes of limitation are designed to protect defendants against fraudulent claims, the Court ruled that

[t]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure.

88 U.S. (21 Wall.) at 349–50. Thus the statute of limitations is tolled until the fraud is, or should have been, discovered.

■ The Supreme Court subsequently universalized the doctrine in *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), where it stated that the equitable tolling doctrine should be "read into every federal statute of limitations." The Seventh Circuit, further refining the doctrine, has ruled that the tolling doctrine operates against "those who negligently facilitate fraud" as well as those who take affirmative steps to conceal fraud. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1296 (7th Cir.1975) (Rule 10b–5 securities fraud case). *See also Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 (7th Cir.1987); *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1004 (7th Cir. 1984); *Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364, 375 (7th Cir.1974). In the present case the record is unclear as to whether the debtors actively concealed the newly discovered assets, or whether they negligently facilitated fraud by simply failing to schedule these assets. In the former situation, the statute of limitations would be tolled until actual discovery of the fraud; in the latter, the tolling would last until the fraud could reasonably have been discovered by a trustee exercising due care. *Sperry v. Barggren,* 523 F.2d 708, 711 (7th Cir.1975). This issue is properly left to the bankruptcy court to resolve.[7]

The equitable tolling doctrine has been invoked several times to toll the statute of limitations in section 546 cases (*In re Candor Diamond Corp.,* 76 B.R. 342, 350

---

**7.** It is true that the equitable tolling doctrine requires that the concealment or fraud be clearly alleged. Construing the trustee's motion liberally, it is clear that the alleged circumstances

of the debtors' concealment of a third mortgage on their home satisfies this requirement. *Cf. Puttkammer v. Stifel, Nicholaus & Company, Inc.,* 365 F.Supp. 495, 497–98 (N.D.Ill.1973).

(Bankr.S.D.N.Y.1987), *Schlueter v. Cozad,* 674 F.Supp. 1351, 1355 (C.D.Ill.1987), *In re Butcher,* 72 B.R. 247, 250 (Bankr.E.D. Tenn.1987)) as well as cases under the predecessor statute 11 U.S.C. § 11. *See In re Friedman,* 15 B.R. 493, 494 (Bankr.N. D.Ill.1981). Because this court finds that in this case the need to thwart fraudulent concealment in bankruptcy cases outweighs the need for finality of dispositions that section 546(a) provides, the trustee's motion for reopening is not automatically barred by the statute of limitations.

### C. *Laches*

■ The trustee still has another hurdle to clear, however, because the debtor contends that the motion to reopen should be barred by laches. If the trustee were guilty of laches, moveover, he could not avail himself of the doctrine of equitable tolling. *Bailey v. Glover,* 88 U.S. (21 Wall.) at 349–50. In support of their laches defense, the debtors state that "a number of years" have passed since the estate was closed. Appellant's Brief at 7. But the mere passage of time is insufficient, standing alone, to establish laches. The debtors must show that the trustee's delay in asserting a right was inexcusable, *and* that the debtor was thereby prejudiced. *In re Petty,* 93 B.R. at 213; *In re Stanke,* 41 B.R. at 381. The debtors have failed to even allege these elements, let alone prove them, so at this time it would be inappropriate to sustain debtors' laches agrument. Furthermore, it is hornbook law that one seeking equity must do equity. A debtor who has concealed assets from a trustee cannot invoke laches to preserve the concealment. *See In re Thomas,* 204 F.2d at 794. Because the debtors have not shown undue delay, prejudice, or "clean hands," their laches argument must fail.

■ Finally, the debtors argue that reopening the estate would be futile because the two previous mortgages on the house, when combined with a broker's commission for selling the property, would leave "insufficient equity in the property for the Trustee to administer in a re-opened estate, ..." Appellant's Brief at 6. Once again, it would be inappropriate for this court to decide this issue based on the present record; it is better to leave this issue to the bankruptcy court to develop a more detailed record. The debtors further charge that only the trustee would benefit from reopening the case. The debtors support this accusation with neither evidence nor arguments. Nevertheless, the absence of all of the debtors' creditors from the proceeding below is conspicuous. To justify reopening a case there should be evidence of interested creditors who would be benefitted thereby. *Cf. In re Kweit,* 43 F.Supp. 585, 587–88 (E.D.N.Y.1942). If, on remand, no interested creditors can be found, the bankruptcy court may find it necessary to dismiss the case.

### *Conclusion*

■ In view of the equitable tolling doctrine, it cannot be said as a matter of law that the bankruptcy court has acted in an arbitrary or capricious manner. Some cautionary remarks, however, are warranted to guide the bankruptcy court in exercising its discretion to reopen the case. There is a danger that the automatic application of the equitable tolling doctrine would effectively nullify the section 546(a) statute of limitations. After all, petitions for reopening inevitably assert that there are newly discovered assets to be administered which were previously concealed, either willfully or negligently. Therefore, it is crucial that some evidence be adduced to demonstrate the likelihood of fraud, and that the bankruptcy judge make a finding on this issue. The trustee must bear the burden of adducing such evidence, as well as showing that he was reasonably diligent in seeking the facts that would have disclosed the concealment. *Cf. Teamsters Local 282,* 815 F.2d at 456. The standard by which to judge the adduced facts and circumstances should be flexible; it should succor duped trustees while also protecting insolvent debtors.[8] This court feels that a

---

**8.** It must be remembered that a primary purpose of the Bankruptcy Act is to stabilize a debtor's finances and thus afford him a "fresh start." Both of these goals are jeopardized by a

sliding scale would best accommodate these needs. The longer the period between the closing and reopening, the more cause must be shown to warrant a reopening. *See In re Penland,* 34 B.R. 536, 539 (Bankr.E.D.Tenn.1983). Because equitable tolling is essentially a fact-based decision, and the present record is sparse, it will be up to the bankruptcy court to determine whether the doctrine should govern this case. *See Schlueter v. Cozad,* 674 F.Supp. 1351, 1355 (C.D.Ill.1987). Similarly, a record must be developed with respect to the debtors' arguments that a reopening would be futile. This should include evidence of interested creditors who could potentially benefit from a reopening.

In the event that the case is ultimately reopened, the debtors have little cause to complain. As the court in *In re Thomas* observed, the Bankruptcy Code is meant to aid beleaguered debtors, but it presupposes that

> one who seeks its protection will deal honestly and fairly with his creditors by furnishing a complete and accurate schedule of his assets.... If the [reopening is] harsh to the bankrupt, it is because he has become the victim of his own handiwork.

204 F.2d at 794–95. The bankruptcy court is AFFIRMED insofar as it granted the trustee standing to move for a reopening, and the case is REMANDED for further proceedings not inconsistent with this order.

It is so ORDERED.

reopening. Therefore, one who moves for reopening must do more than simply mouth the word "fraud" to escape the statute of limitations. *Cf. Matter of Alt,* 39 B.R. 902, 904

(Bankr.E.D.Va.1984) ("Trustees ought not be forever denied the opportunity to collect preferences in a reopened case, but they will not automatically be allowed to do so.")