**In re Glen E. SMITH, Debtor.**

**No. 86 B 6002.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 13, 1987.

Gary Lee Shilts, Aurora, Ill., for debtor.

Ralph M. Bernstein, Chicago, Ill., for creditors.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter comes to be heard on the motion of the debtor, Glen E. Smith ("Smith" or "debtor"), to reopen his Chapter 7 bankruptcy case for the purpose of amending Schedule A–3 to include certain unsecured creditors, Brooks Kellogg and Ronald Campbell ("the creditors" or "Kellogg and Campbell").[1] The creditors object to the reopening and have filed a motion for summary judgment wherein they seek to have the debtor's motion denied. For the reasons set forth below, the court, having carefully examined the pleadings, memoranda, and affidavits submitted by the parties, grants the creditors' motion for summary judgment.

## BACKGROUND

On May 12, 1983, the debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The court fixed July 13, 1983 as the last day for filing objections to the discharge of the debtor and for filing complaints to determine the dischargeability of debts. Pursuant to Bankruptcy Rule 2002(e), creditors were also noticed that the case appeared to be a no asset case and therefore it was unnecessary to file a proof of claim unless and until creditors were notified that assets were discovered from which a dividend could be paid. The court granted Smith a discharge of all scheduled debts on March 8, 1984, and on May 31, 1984, the case was closed. Since no assets were discovered subsequent to Smith's discharge, no specific bar date was ever set by which creditors were required to file proofs of claim.

On November 13, 1985, the debtor moved to vacate the discharge entered on March 8, 1984 and to reopen his Chapter 7 case to schedule the previously-omitted creditors, Kellogg and Campbell, in the amount of $140,000.00 and obtain a discharge thereof. The debt to the creditors arose out of a default judgment entered against the debtor in June, 1984 pursuant to a state court suit filed by Kellogg and Campbell alleging that money loaned to the debtor and another individual, H. Brooks Paxton had not been repaid.[2] The lawsuit in question was instituted on November 15, 1983 during the pendency of debtor's Chapter 7 proceedings and prior to his obtaining a discharge. The creditors allege that they had no knowledge, actual or constructive, of the pending bankruptcy. Both defendants, Smith and Paxton, were served with summons in December, 1983. George E. Faber ("Faber"), who represented the debtor at that time in his personal Chapter 7 case,[3] represented

---

1. The debtor also moved to add John Schneiter as an additional creditor to whom the debtor owed approximately $10,000.00 arising out of a state court judgment obtained in May, 1985. Schneiter strenuously objected to a reopening of the case and being added as a creditor, alleging that the debtor intentionally failed to list him in his original schedules because he needed additional financing from Schneiter and because Schneiter would have been aware of additional assets which the debtor's Chapter 7 petition failed to disclose. On August 27, 1986, more than nine months after the debtor's motion was filed, the debtor withdrew his motion to add Schneiter as a creditor, which motion was granted without objection. However, because of the serious nature of the allegations of Schneiter, a copy of this opinion is being trans-

mitted to the United States Attorney for an investigation as to whether an abuse of the bankruptcy laws has occurred in this Chapter 7 case.

2. According to the debtor, these defendants were sued on a Letter of Credit which was signed by the debtor, as president, and by Paxton on behalf of the Glenbrook Financial Corporation.

3. Faber presented his motion to withdraw as debtor's attorney on December 18, 1985, approximately one month after the present motion to reopen was presented by debtor's new counsel. The hearing on Faber's motion to withdraw was adjourned sine die on January 29, 1986. Debtor's new counsel subsequently moved to with-

Paxton in the Circuit Court lawsuit and sent a letter to Kellogg and Campbell's attorney stating that he would possibly also appear on the debtor's behalf in that suit. However, Faber never filed any pleading on Smith's behalf and the resultant default judgment was entered in the amount of $140,000.00.

The creditors state by way of affidavit that they never knew of Smith's bankruptcy until the present motion to reopen was filed in November, 1985. The creditors further allege that Faber, the debtor's former attorney, never notified Kellogg and Campbell that Smith's bankruptcy was pending at the time the state court suit was being litigated but rather concealed that fact from Kellogg and Campbell.[4] Therefore, the creditors contend that the present motion should be denied on the basis that the omission of these creditors on the original schedules was not due to mere inadvertence.

The debtor is not consistent in his contentions as to why this particular debt was omitted other than to allege that it was merely an oversight. Beyond that, debtor admits on the one hand that he was served with summons and therefore knew of this lawsuit (which would have been prior to his receiving a discharge) but that he turned the matter over to Faber, his attorney of record at that time. On the other hand, debtor states that the existence of this debt was not made known to Faber since he never turned the documents over to Faber for defense. Notwithstanding, the debtor contends that it was not unreasonable to omit Kellogg and Campbell prior to the date the state court lawsuit was instituted since he believed the contract underlying

the lawsuit was a corporate liability for which he was not individually or personally liable.[5] Moreover, the debtor alleges that there is no evidence of, nor motive for, any fraud or intent to deceive Kellogg and Campbell. Therefore, the debtor requests that his motion to reopen and amend be granted.

## DISCUSSION

 Section 350(b) of the Bankruptcy Code provides as follows:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350(b) (West 1986). Bankruptcy Rule 5010 provides that a case may be reopened on motion of the debtor or other party in interest pursuant to section 350(b). A debtor's goal to be discharged of a debt by adding additional creditors is a proper purpose for a bankruptcy court to reopen a closed case "to accord relief to the debtor." *Matter of Davidson*, 36 B.R. 539, 543 (Bankr. D.N.J.1983). Nevertheless, whether to reopen a bankruptcy case and allow amendment of schedules is committed to the sound discretion of the bankruptcy judge. *In re Rosinski*, 759 F.2d 539, 541–542 (6th Cir.1985). Where there has been an omission of a creditor through an honest mistake and the rights of all parties will not be prejudiced by the amendment, amendments are generally liberally allowed. However, the courts are unanimous in denying a motion to reopen where a debtor's failure to include a creditor on the original schedule was part of a scheme of fraud or intentional design. *In re Gray*, 57 B.R. 927, 930 (Bankr. D.R.I.1986).

draw, which motion was granted on November 26, 1986.

**4.** The parties are in dispute as to when the creditors' *counsel* was informed of Smith's bankruptcy. Although the creditors' attorney states by way of affidavit that Faber never disclosed the debtor's bankruptcy at the time of the state court suit or any time thereafter, both Faber and a former associate state in their respective affidavits that the creditor's attorney was orally advised of the Chapter 7 suit at a motion call in state court, both in April, 1984 and June, 1984. Nevertheless, it is clear that

even if creditors' counsel was in fact orally advised of the bankruptcy, it was at least five months after the suit was instituted as well as subsequent to the discharge being entered. Moreover, the record is clear that the creditors themselves never received formal notice of the pendency of this case prior to its closing. Therefore, a resolution of this particular dispute would not change the result in this case.

**5.** The court notes, however, that debtor fails to argue why it was reasonable to omit Kellogg and Campbell *after* the state court lawsuit was initiated prior to his discharge.

Even if an amendment of schedules is allowed, section 523(a)(3) bars a debt from being discharged if it was not properly scheduled in time to allow the creditor to timely file a proof of claim and, if the debt is based on fraud, misconduct of a fiduciary, embezzlement, larceny, or wilful and malicious injury, in time to permit the creditor to file a complaint to determine the dischargeability of the particular debt. Section 523(a)(3) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

. . . . .

The Seventh Circuit in *Matter of Stark*, 717 F.2d 322 (7th Cir.1983) concluded that it was only this singular right to timely file a proof of claim that was protected by section 523(a)(3). Thus, the court of appeals in *Stark* held that, where no bar date had ever been set because a report of no assets had been filed, a creditor would not be irrevocably harmed by a reopening of a case and an amendment of schedules so long as there has been no evidence of fraud or intentional design. *Id.* at 324. *See also*

*In re Rosinski, supra,* 759 F.2d 539; *In re Scism,* 41 B.R. 384, 388 (Bankr.W.D.Okla. 1984).

In examining the fact situations in *Stark* and other cases where courts have attempted to ascertain whether debtors seeking to reopen and amend have engaged in fraud, intentional design, or reckless disregard for the accuracy of schedules, it appears that the courts have implicitly looked at three factors: (1) when the debtor first had knowledge of the claim at issue; (2) the length of the delay before the debtor moved to reopen the case to amend schedules; and (3) the debtor's excuse for the omission. For example, the debtors in *Stark* had submitted a claim to their insurance company for hospital services they received. Since they believed the hospital bill would be paid by the insurance company, the debtors did not list the hospital on their original schedules. Approximately six months after the discharge was entered, the hospital instituted a lawsuit against the debtors who thereafter sought to reopen their case and amend their schedules to include the omitted hospital as creditor. The court of appeals found the omission unintentional and the result of innocent mistake. Based on the aforementioned tripartite analysis, (1) the debtors in *Stark* first knew of the claim against them pursuant to a suit commenced post-petition; (2) they moved shortly thereafter to reopen the case to add the omitted creditor; and (3) the debtors had a plausible excuse for the omission.

Looking at the converse situation, this court is of the opinion that a finding of fraud, intentional design, or reckless disregard is warranted where (1) a debtor knew of the claim before his case was closed; (2) the debtor waited a substantial period of time after the case was closed to move to reopen and amend; and (3) the debtor has no valid justification for the original omission. In such a situation, a finding of prejudice to the creditor would necessarily follow [6] so that it would be be-

---

**6.** Although the Seventh Circuit would, as noted *supra,* hold that there is no harm to creditors in a no-asset case because the creditors have not been denied a right to participate in any divi-

dend distribution by virtue of filing a proof of claim, other decisions have emphasized that an omitted creditor has been prejudiced by more

yond the court's sound discretion to reopen a closed case in order to discharge an unscheduled debt.

■ The court concludes that all three aspects of the latter situation exist in the present case. The lawsuit culminating in the entry of the default judgment was filed and summons was served on the debtor during the pendency of the Chapter 7 case and prior to discharge. Although the debtor may have had no cause to know of this claim by Kellogg and Campbell at the time the petition was filed, the debtor had an opportunity to amend his schedules before the discharge was entered and the case closed. Instead, the debtor delayed resolution of this matter for approximately two years. The debtor waited until November, 1985 to move to reopen the case although the default judgment had been entered against him in June, 1984, and he had knowledge of the debt in December, 1983.

Notwithstanding, the debtor offers as justification for not previously amending his schedules the fact that he did not think he was personally liable on the corporate debt. However, the court finds that the debtor in this case, as president of the corporation, "was or should have been aware of the responsibilities and consequences attendant to the execution of a [contract] on behalf of a corporation." *In re Gilbert*, 38 B.R. 948, (Bankr.N.D.Ohio 1984). If there could have been any doubt raised as to his liability on this debt, it was incumbent on the debtor to list the debt on his schedules at least at the time he was served with summons during the pendency of his Chapter 7 case and thereafter litigate the issue of liability.

Based on the foregoing, the court concludes that the debtor in this case has demonstrated reckless disregard for the accuracy of his schedules, if not intentional delay in failing to schedule this debt. The facts of this case preclude any finding that

the omission of this debt was due to mere inadvertence or excusable neglect.

THEREFORE, IT IS HEREBY ORDERED that debtor's motion to reopen his Chapter 7 case be, and is hereby, denied.

---

than the singular finding in *Stark.* Importantly, the omission of a creditor prior to the closing of the case bars him from objecting to the debtor's discharge and otherwise participating in the examination of the debtor and the administration of the estate. *See, e.g., Matter of Davidson, supra,* 36 B.R. at 544–45; *In re Crum,* 48 B.R. 486, 490 (Bankr.N.D.Ill.1985). Moreover, a creditor is harmed when he expends time and effort in attempting to collect a debt which has been omitted from a petition. This harm alone has been held sufficient so as to warrant denial of a motion to reopen a case. *See In re Blossom,* 57 B.R. 285 (Bankr.N.D.Ohio 1986).