**In re O.A. WINBURN, Debtor.**

**Bankruptcy No. 87–00165.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

March 26, 1996.

D. Andrew Vloedman, III, Gainesville, FL, for debtor.

Sharon Sperling, Trustee, Gainesville, FL.

## ORDER ON DISTRICT COURT'S ORDER OF REMAND

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

### FACTS [1] AND PROCEDURAL HISTORY

THIS MATTER is before the Court pursuant to the order of remand by the District Court for an evidentiary hearing on the issue of whether the reopening of this case is barred by the doctrine of laches. The following facts are not in dispute. The Debtor was a dairy farmer whose herd was allegedly infected with brucellosis by cattle leased from the Borg–Warner Corporation. Because of the infection, the herd was subsequently sold for slaughter. The Debtor then sued Borg–Warner for its alleged infection of the Debtor's herd.

On July 28, 1982, after unsuccessful attempts at obtaining more cattle and other proceeds to restart the dairy farm, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The cause of action against Borg–Warner was listed as an asset in the Chapter 11 case. One of the creditors in the case was represented by attorney J. Michael Davis, of Gainesville. The Chapter 11 case was dismissed on June 18, 1984, after the Court determined there was no reasonable prospect of reorganization and that dismissal would be in the best interest of creditors of the estate. Mr. Davis was present at that hearing.

Three years later, on August 8, 1987, after foreclosure judgments were entered against his property, the Debtor filed a pro-se Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. The creditors in the Chapter 7 were primarily the same creditors who were in the Debtor's prior Chapter 11 case. J. Michael Davis was appointed as the Trustee in the Chapter 7. At the time the petition was filed the Debtor was still the plaintiff in the pending lawsuit against Borg–Warner. However, the Debtor did not list the cause of action on the schedule of assets and liabilities, nor was the cause of action referred to in the statement of financial affairs.

On May 16, 1988 the Debtor executed an "Application to Amend Petition" in which he amended his schedules and statement of affairs by adding two creditors to his schedule of liabilities, reducing the value of assets scheduled and by adding to the statement of affairs the following: "Add Winburn v. Borg–Warner filed in the U.S. District Court, Northern District, 110 E. Park Street, Tallahassee, Florida." The lawsuit was not added to the schedule of assets. Coincidentally, the Debtor's discharge was entered on May 17, 1988, the same day the amendments were filed with the court. On July 28, 1988, Davis filed a "Report of Trustee in No–Asset Case." The case was subsequently closed when this Bankruptcy Court approved the Trustee's report on August 4, 1988.

After his bankruptcy case was closed, the Debtor continued the prosecution of the lawsuit against Borg–Warner. On June 26, 1992, a jury returned a verdict in favor of the Debtor against Borg–Warner, and awarded approximately 2.5 million dollars in compensatory and punitive damages. The District Court subsequently entered judgment N.O.V. in favor of Borg–Warner. That decision is now on appeal to the Eleventh Circuit.

On October 14, 1992, the U.S. Trustee filed a Motion to Reopen the Case Without a Hearing, so that the cause of action against Borg–Warner could be administered as an asset of the bankruptcy estate. This Court granted that motion on October 19, 1992. The Debtor subsequently filed a Motion to Vacate Order Reopening the Estate, which the Court denied. *In re Winburn,* 167 B.R. 673 (Bankr.N.D.Fla.1993). The Debtor then appealed to the United States District Court, Northern District of Florida. The District Court concluded that although the Debtor's lawsuit against Borg–Warner was not abandoned by the Trustee, the Bankruptcy Court erred in part by not providing an evidentiary hearing on the issue of laches. *In re Winburn,* # 93–10189 (N.D.Fla. Sept. 14, 1994) at 7, 9.

---

1. *See also In re Winburn,* 167 B.R. 673 (Bankr.  N.D.Fla.1993).

An evidentiary hearing was held on February 1, 1996, pursuant to the order of remand. At the hearing, Mr. Winburn testified and, by the agreement of the parties, deposition testimony of other witnesses was admitted into evidence. The parties then submitted memoranda of law. After careful review of the evidence and memoranda, I conclude that laches is not a bar the reopening of this estate.

## CONCLUSIONS OF LAW

### I

■ Generally, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, and for other cause." 11 U.S.C. § 350(b) (1996). Under the Bankruptcy Rules, "a case may be reopened on motion of the debtor or other party in interest pursuant to section 350(b)." *In re Smith,* 68 B.R. 897, 899 (Bankr.N.D.Ill.1987); F.R.B.P. 5010 (1996). The moving party has the burden to demonstrate sufficient cause to reopen. *In re Pagan,* 59 B.R. 394 (D.P.R. 1986). The discretion to reopen the case remains with the bankruptcy judge. *In re Haker,* 411 F.2d 568 (5th Cir.1969); *In re Jensen,* 46 B.R. 578 (Bankr.E.D.N.Y.1985).

■ However, the doctrine of laches may bar the reopening of a case. Laches is an equitable defense which bars a party from proceeding with its cause of action because of a delay which results in prejudice to the party asserting the doctrine. The District Court, in its appellate review of *In re Winburn,* 167 B.R. 673, set forth the following laches test:

> The objectors must demonstrate, *at the least,* that (1) the moving party knew of the asset before the case was closed, (2) the moving party waited a substantial period of time after the case was closed to move to reopen, and (3) the moving party has no valid justification for the original omission.

*District Court Order* at 9 (citing *In re Rivers,* 89 B.R. 30 (Bankr.E.D.Ark.1988) (emphasis added); *In re Smith,* 68 B.R. 897 (Bankr.N.D.Ill.1987)). According to the United States Supreme Court, the doctrine of laches also "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). A party does not sufficiently meet its burden by merely showing lack of diligence and that it suffers prejudice. *Id.* The party must also show that the prejudice is caused by the other party's delay. *Id.*

■ As is typical for defenses, the burden falls upon the party asserting the laches defense. *Id.* In bankruptcy, the burden remains the same. The party who objects to reopening a case must still demonstrate that the moving party lacked diligence and that prejudice results to them. *White v. Boston (In re White)* 104 B.R. 951, 957 (S.D.Ind. 1989).

### II

■ Under the first element, whether or not the U.S. Trustee "knew of the asset before the case was closed," Winburn has not proven that the U.S. Trustee had actual or constructive knowledge. Winburn did testify that on September 1, 1987, that he answered questions about the Borg–Warner suit at the 341 Meeting of Creditors. *See also Debtor's Response to Motion to Suspend* (Docket #38). However, the U.S. Trustee wasn't even in existence in this district until 1991. Therefore, The U.S. Trustee could not have known about the asset before the case was closed.

Even if knowledge of Chapter 7 Trustee can be imputed to the U.S. Trustee, there is no evidence that the Trustee knew specifically of the existence of this asset. I realize that the Trustee, Davis, represented a creditor in the Debtor's previous Chapter 11. However, Davis's knowledge about the significance of the lawsuit during his tenure as Chapter 7 Trustee was not established. Regarding his role as Chapter 7 trustee, Davis testified: "I think whenever I saw something relating to a suit against Borg–Warner, once again, I was thinking this is another one of those desperation kind of counterclaim things and really didn't think much about it, you know, in the sense of doing any extensive investigation on it." *Davis Deposition,* at 25.

Davis did not realize this asset was actually the brucellosis claim, but instead believed it to be a desperation counterclaim filed against a creditor in the hope of reducing the creditor's claim.

While Mr. Winburn's attorney attempted to prove that Davis possessed extensive knowledge of the asset when he was representing a creditor in the previous Chapter 11, Davis stated he did not possess such knowledge. *Davis Deposition*, at 10–13. Instead, Davis stated that his knowledge of the value of the suit was quite limited, because of the interests of Davis's client at that time, and because the representation was made at the dismissal hearing that the suit could not be pursued. *Id.* The Trustee of the Chapter 11 case corroborated Davis' testimony, stating that the attorney involved did not wish to go forward without assurances that he would be paid for his efforts, and did not want to incur expenses when any recovery might be subject to a security interest of the Farmers Home Administration. *Hall–Manuel Deposition*, at 11–12. I find Davis' testimony to be credible. Winburn has not proven the U.S. Trustee or the Chapter 7 Trustee "knew of the asset before the case was closed."

### III

■ The second element, whether the U.S. Trustee "waited a substantial period of time after the case was closed to move to reopen," was also not satisfied. A substantial period of time is relative to the facts of each case. Reopenings have been granted when longer periods have passed, *In re Coffee Cupboard, Inc.*, 118 B.R. 197 (Bankr.E.D.N.Y.1990) (allowing debtor to reopen case to convert from Chapter 11 to Chapter 7, 5 years after final decree), and have been denied when the period has been shorter, *In re Jackson*, 142 B.R. 325 (Bankr.W.D.Ark.1992) (14 months considered too long to reopen case to discharge a foreclosure judgment). The longer the time between closing and reopening the estate, the more compelling the cause must be.

*Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir.1962).

In our case, approximately four years and two months passed before the U.S. Trustee moved to reopen the estate. The estate was closed August 4, 1988, (Docket 15), and the U.S. Trustee moved to reopen on October 14, 1992 (Docket 16). While this time period appears to be lengthy, the facts and circumstances surrounding this case compel reopening, even after four years. The "asset", as it currently stands, has a potential value in excess of $5 million dollars as a maximum (the verdict amount, plus interest), and zero at a minimum. But if judgment is ultimately entered on the jury's verdict and collected, Mr. Winburn would receive millions of dollars, even after all of his creditors have been paid.[2] The policy underlying the doctrine of laches recognizes that " '[t]he lapse of time carries with it the memory of life and of witnesses, the muniments of evidence, and other means of proof.' " *Costello*, 365 U.S. at 282, 81 S.Ct. at 543 (quoting *Brown v. County of Buena Vista*, 95 U.S. 157, 161, 24 L.Ed. 422 (1877)). However, Winburn has not suffered in any of these areas. For an amount of time to be considered "substantial," it would follow logically that the underlying reasons for the doctrine should be present in the case.

It is possible that if Mr. Winburn had altered his lifestyle during the four years in question, in reliance on the asset, the length of time could be viewed as significant. However, Mr. Winburn testified that he has not changed his lifestyle as a result of the judgment. Even if such a lifestyle change had occurred, its relevance would be questionable. *Cf. Costello*, 365 U.S. at 281, 81 S.Ct. at 542–43 (declining to apply doctrine of laches to denaturalization proceeding brought after 27 year delay). I hold that the ability to pay all of the Chapter 7 creditors, without unduly depriving the bulk of the asset from Mr. Winburn, is sufficient cause to reopen this case after four years.

---

**2.** Winburn's Summary of Schedules from his original petition show a total debt of $673,-659.94. Of that amount, $573,836.95 was classified as secured claims, $98,831.95 was classified as unsecured claims without priority, and $991.04 was classified as unsecured priority claims.

## IV

Under the third element, whether "the moving party has no valid justification for the original omission," the Court is confronted with a problem: the manner in which the Court should interpret the phrase "the original omission." The problem develops from the District Court's adoption of the *In re Smith* test. The test determined whether laches would bar a *debtor* from reopening a case in order to discharge an unscheduled debt. The District Court, in its adaptation of the *In re Smith* test, has not considered that the U.S. Trustee does not have a duty similar to a debtor's duty to correctly submit an asset schedule. For the Court's purposes, the Court shall interpret "the original omission" as meaning "not acting quickly enough."

The third element, therefore, requires Winburn to prove that the U.S. Trustee had no valid justification for not acting sooner to reopen the case. Winburn has not satisfied this element. The U.S. Trustee acted within 3½ months of the verdict, which was reasonable given the information provided to them. There is no evidence that the U.S. Trustee had any knowledge of the lawsuit until after the verdict. If it is Winburn's position that the Chapter 7 Trustee had the duty to act, Winburn still does not prevail. Because the lawsuit was never actually listed as an asset in the Debtor's schedules, and because the Chapter 7 Trustee was unaware of the nature of the lawsuit at the time the case was closed, he also had a valid excuse for not acting sooner. *See White v. Boston (In re White)* 104 B.R. 951, 957 (S.D.Ind. 1989) (rejecting laches argument when debtor failed to prove trustee's delay was inexcusable).

## V

To complete the analysis, the Court must consider not only the District Court's test, but also whether Winburn was prejudiced and whether the prejudice was caused by the U.S. Trustee's lack of diligence in reopening. *See Costello* at 282–3, 81 S.Ct. at 543–44. Prejudice generally can be found when an objector has changed its position. For example, a creditor who has expended funds to recover a debt has changed position. *In re Sills,* 126 B.R. 974 (Bankr.S.D.Ohio 1991); *In re Stanke,* 41 B.R. 379 (Bankr. W.D.Mo.1984).

Winburn's expenditures in his litigation against Borg–Warner has been minimal, because it is being prosecuted on a contingency fee basis. Mr. Winburn did receive a $25,000 settlement from a veterinary clinic involved in the case. *See Winburn Deposition* at 53–55. Of that amount, half went to the attorneys involved in the suit, and part went to fund the costs incurred in pursuing the Borg–Warner litigation. *Id.* Winburn has incurred other legal fees from attorney Art Haller of approximately $8,000.00, but Haller has obtained a common law charging lien, and will be paid from the potential proceeds of the Borg–Warner litigation.

Even if these expenditures were substantial, Winburn will not be prejudiced if the case is reopened. Winburn is attempting to retain the entire proceeds of an asset in his possession at the time he filed his Chapter 7 case. The reality is that Winburn currently does not own the asset. Because it was never abandoned, the asset is property of the estate. *In re Winburn,* 167 B.R. 673 (Bankr. N.D.Fla.1993). Furthermore, if a judgment is entered on the jury's verdict, Winburn stands to receive a substantial amount of money, even after all of his creditors, and his attorneys, have been paid in full. Winburn simply cannot be prejudiced by the partial loss of an asset he had no right to possess in the first place.

The Supreme Court held as much in *Costello.* In his application for naturalization, Costello swore that his occupation was "real estate," when it was really bootlegging. 365 U.S. at 272–73, 81 S.Ct. at 538–39. The United States commenced denaturalization proceedings over thirty years after he was granted citizenship. *Id.* at 266–67, 81 S.Ct. at 535–36. The Supreme Court found no undue prejudice against Costello in the revocation of his citizenship after such a long delay. The Court stated:

> He suffered no prejudice from any inability to prove his defenses. Rather, the harm he may suffer lies in the harsh con-

sequences which may attend his loss of citizenship. He has been a resident of the United States for over 65 years, since the age of four. We may assume he has built a life in reliance upon that citizenship. But Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud. On this record, the petitioner never had a right to his citizenship.

*Id.* at 283, 81 S.Ct. at 544. Winburn has claimed to be prejudiced because he is being stripped of a portion of a valuable asset. However, because of the inaccuracies on his schedules, it is not Winburn's asset to keep. The asset belongs to his Chapter 7 estate, and therefore, Winburn will not be prejudiced if the case is reopened.

The doctrine of laches is based on principles of equity. Here, the Debtor is seeking to reap a windfall while his creditors go empty-handed. He seeks to profit from his own failure to properly schedule the lawsuit as an asset in his schedules. Reopening the case to administer the proceeds, if any, from the lawsuit will not leave the Debtor in any worse a position than he was in immediately prior to the jury's verdict. If the verdict stands and a judgment is collected, the Debtor will be a rich man whether the case is reopened and his creditors paid, or not. Equity should not sanction Mr. Winburn's keeping everything while his creditors get nothing. *Thomas v. Lurie (In re Thomas),* 204 F.2d 788, 794 (7th Cir.1953).

## VI

The Debtor has also challenged the standing of the Trustee and the U.S. Trustee to reopen the case. This challenge comes much too late. After a hearing, I had entered an order on May 23rd, 1993 that narrowed the legal issues involved in reopening this case. In that order I held that the "U.S. Trustee has standing to administer the instant case and to appoint an Interim Trustee to administer any assets of the estate." *Order Establishing Remaining Issues And Scheduling Discovery,* Docket # 42. This order was never appealed, and more importantly, the issue was never raised on the appeal to the District Court. Therefore, the Debtor is bound by my ruling. *See Browning v. Navarro,* 887 F.2d 553 (5th Cir.1989) (barring

fraud claim because defendant could have raised claim in original Title 1983 action by invoking bankruptcy jurisdiction of District Court), *reh'g denied,* 894 F.2d 99 (5th Cir. 1990).

Additionally, the Debtor's arguments are unpersuasive. The Debtor cites *In re Ayoub,* 72 B.R. 808 (M.D.Fla.1987), but I find its holding inapplicable, as it did not address the status of the U.S. Trustee. The U.S. Trustee's Office is in the best position to gather information from different sources about assets that have been left unadministered, and then allows the court to act upon that information by filing a motion to reopen the case. A U.S. Trustee is clearly a "party in interest" within the meaning of Rule 5010 and 11 U.S.C. § 350(b). *White,* 104 B.R. at 954 (finding *In re Ayoub* overly formalistic). Accordingly, it is hereby

ORDERED that the doctrine of laches does not bar the reopening of this estate, and it is further

ORDERED that the case shall stand reopened, and it is further

ORDERED that the Trustee is directed to administer the asset in accordance with the provisions of the Bankruptcy Code.

DONE AND ORDERED.