Karen S. Jennemann, United States Bankruptcy Judge
Christiana Trust[1] seeks to reopen this long ago closed Chapter 7 bankruptcy case asking the Bankruptcy Court to do the impossible-to compel a dead man to surrender his home.[2] Although bankruptcy courts admittedly have broad equitable powers, resurrection is not among their options. The motion to reopen is denied because no relief is possible or equitable.
Debtors filed this routine and uneventful Chapter 7 bankruptcy case over eight years ago on February 19, 2010.[3] They received their discharge on July 1, 2010.[4] In their Statement of Intentions, the Debtors indicated they wanted to reaffirm the mortgage debt encumbering their home[5] and held by Bank of America.[6] Only Charles McHale, however, signed the promissory note connected to the mortgage.[7] Susan McHale had no debt to reaffirm.
Bank of America never sent Mr. McHale a reaffirmation agreement for him to sign. Instead, the lender sent a letter to the Debtors' lawyer inviting him to explore the bank's "home retention programs" with his *673 clients.[8] Bank of America had actual knowledge of the bankruptcy filing but filed no proof of claim with the Bankruptcy Court and took no action in this Chapter 7 case.
Similarly, Mr. McHale never prepared, signed, or filed any reaffirmation agreement with the Bankruptcy Court.[9] But, he always acted consistently with his intent to reaffirm the debt. He was current with his payments when his bankruptcy case was filed and remained current when he received a discharge.[10] He made multiple payments, all accepted by the lender, after his bankruptcy case was closed.[11]
Christiana Trust acknowledges the Debtors were current on their mortgage payments when they filed bankruptcy on February 19, 2010, and they made all future payments through February 2011.[12] Mr. McHale, by this point, was dying. Because he could no longer earn his regular income and despite his declining medical condition, Mr. McHale valiantly tried to restructure the loan.[13] Bank of America eventually offered a loan modification to Mr. McHale in August 2011.[14] Debtors made ten full payments under the temporary loan modification agreement that was only supposed to last for three months.[15] Bank of America accepted every payment, the last one being made by the Debtors' daughter on May 23, 2012.[16]
Mr. McHale died on April 26, 2012.[17] Bank of America refused to accept any of the many later payments tendered by Mrs. McHale. The lender also refused to issue a permanent loan modification[18] or to assist Mrs. McHale, the surviving Debtor, with restructuring the mortgage encumbering her home.[19] The testimony was uncontroverted that Mrs. McHale, assisted by her family, was willing and able to continue paying for her home. Bank of America simply failed to work with their borrower's widow.
Bank of America and later the Christiana Trust instead pursued two separate foreclosure actions against Mrs. McHale. The first foreclosure case was filed on *674 January 4, 2013.[20] Because the lender could not procure a witness to prove its alleged debt, Christiana Trust voluntarily dismissed the first foreclosure on October 3, 2014.[21]
Christiana Trust filed a second foreclosure action on May 19, 2015.[22] The second foreclosure action remains pending. Christiana Trust, not Mrs. McHale, has asked to continue the trial in this second foreclosure case at least three times.[23] Then, on June 18, 2016, almost six years after the Debtors received their discharge in this bankruptcy case and three and a half years after the initial foreclosure action was filed, Christiana Trust filed its motion to reopen this closed Chapter 7 case.[24] Christiana Trust argues the Debtors did not properly reaffirm the debt then due to Bank of America, and the Bankruptcy Court should compel the surrender of the home.
Section 350(b) of the Bankruptcy Code[25] allows a bankruptcy court to reopen a case for "cause."[26] Bankruptcy courts use their discretion to determine whether the moving party[27] has demonstrated sufficient cause to reopen the case based on the circumstances and equities of the case.[28] The decision to reopen a long closed bankruptcy case rests on a balancing test weighing the benefits and prejudices to the creditors and the debtors as well as many other equitable factors.[29] Courts also should consider the suitability of alternative forums and how long a movant waited to seek reopening, requiring a more compelling justification to reopen when the delay is extensive.[30]
Under § 521(a)(2)(A) of the Bankruptcy Code, a Chapter 7 debtor who owes money to a secured creditor with a lien must decide whether they want to surrender the property secured by a lien or, if they would like to retain the property, whether they want to reaffirm or redeem the debt.[31] Debtors must choose one of these three options.[32] They cannot simply *675 continue making payments to the lender because it would allow them to turn a recourse loan into a non-recourse obligation giving them a "head start" instead of a "fresh start."[33] Here, Mr. McHale chose to reaffirm the debt due to Bank of America.[34]
Section 524(c) of the Bankruptcy Code governs reaffirmation agreements and the reaffirmation process.[35] Reaffirmation allows a debtor to reaffirm the debt it owes to a creditor and excuses that creditor's debt from the debtor's discharge.[36] To reaffirm a debt, the parties must come to an agreement where the otherwise dischargeable debt is renegotiated.[37] Section 524(c) provides certain requirements that must be met for a reaffirmation agreement to be valid and binding.[38] For example, a reaffirmation agreement must be executed before the discharge is granted and certain disclosures must be made by the creditor that contain specific language outlined in the statute.[39] "Case law construing § 524(c)... supports the conclusion that the requirements ... must be strictly complied with in order for a reaffirmation agreement to be enforceable."[40] As Chief Bankruptcy Judge Williamson noted in the In re Pitts decision, it is up to the creditor to protect its own rights.[41] If a debtor does not fully proceed through the reaffirmation process, the creditor should seek to ensure the agreement is properly executed.[42]
But, § 521(a)(2)(B) of the Bankruptcy Code requires debtors to perform some act consistent with their stated intention within 45 days.[43] Mr. McHale did not reaffirm the debt within 45 days. Mrs. McHale's testimony was credible and unrebutted, however, that the Debtors' lawyer never explained to Mr. McHale what he needed to do to reaffirm the mortgage debt. Nor did the lender take any action during the bankruptcy to compel Mr. McHale to sign a reaffirmation agreement or otherwise comply with his duties under § 521.[44]
*676 Rather, both parties continued the status quo for years following the bankruptcy discharge and closing.
Mr. McHale made regular monthly payments to Bank of America. The lender accepted these payments and eventually modified the mortgage loan long after the bankruptcy case was closed. The lender has filed and dismissed one foreclosure action. A second, still-pending foreclosure action was filed. Christiana Trust waited until June 2016, almost six years after Mr. McHale received his a bankruptcy discharge in July 2010, to ask the bankruptcy court to reopen this case to force the deceased Mr. McHale and his surviving widow to surrender the family home because Mr. McHale failed to sign a reaffirmation agreement.
The issue now is what relief, if any, is appropriate against Mr. McHale, his estate, and his widow, Mrs. McHale? Is there any relief possible against Mr. McHale or his estate for his failing to sign the reaffirmation agreement? Should I automatically compel the surviving widow, who never was obligated to reaffirm the debt, to surrender her defenses in the pending foreclosure action, as Christiana Trust seeks? Are there other factors that dictate another remedy or no relief?
No Relief is Possible against Mr. McHale or His Estate
The Eleventh Circuit Court of Appeals in Failla[45] recently addressed the issue of possible relief to grant a creditor when a debtor fails to perform his intent to surrender property. The Faillas owned a home, filed a Chapter 7 bankruptcy case, indicated they intended to surrender the home, and got a discharge.[46] Yet, post-bankruptcy, they continued to fight their lender's foreclosure action.[47] The Eleventh Circuit concluded that when a debtor says they intend to surrender property they must surrender it to both the trustee and to the creditor and that "surrender" necessarily prohibits a debtor from contesting a foreclosure action post-bankruptcy.[48]
The authority of bankruptcy courts to craft appropriate remedies when debtors fail to perform their intentions under § 521(a)(2) is found in § 105(a) of the Bankruptcy Code giving bankruptcy courts the discretion to enter any order "necessary or appropriate to carry out the provisions of this title" and the "broad authority...to take any action that is necessary or appropriate 'to prevent an abuse of process."[49] The Eleventh Circuit then affirmed the Bankruptcy Court's order directing the Faillas to stop contesting the pending state court foreclosure action.[50]
However, the Eleventh Circuit did not opine that forcing a debtor to relinquish all defenses in a pending foreclosure action is the only relief possible when a debtor fails to perform his intention under § 521(a)(2), particularly when a debtor indicates he intends to reaffirm a debt as opposed to surrendering his interest in a *677 home.[51] The power granted to bankruptcy courts under § 105 is to use their discretion guardedly fashioning an appropriate remedy that preserves the integrity of the bankruptcy system but does not overreach.[52]
When a debtor says he is going to surrender his home and then continues to fight a foreclosure action, in most cases, the appropriate remedy is for the bankruptcy court to squelch the debtor's defenses.[53] The debtor is doing the exact opposite of what he promised. But, when a debtor states he intends to reaffirm a debt but fails to act, other remedies often are more appropriate, such as confirming the creditor can continue to pursue collection in state court forums irrespective of the debtor's discharge.
Debtors who agree to reaffirm a debt want to pay their creditors. With a home mortgage, they are not trying to escape financial liability. They are trying to honor their promises to pay. This is different from a debtor who says he intends to surrender his home, has not made a payment for years, and then fights a pending foreclosure action simply to get more time to live for free in a house.
Here, Mr. McHale acted entirely consistent with his intent to reaffirm his debt to Bank of America. He was current on his mortgage payments at all times during the bankruptcy, kept his payments current post-discharge for many months, modified the mortgage with Bank of America when his illness advanced, and only stopped making payments when he died. He was not trying to "game" the system or get any "head start." Instead, this was an honorable man who tried desperately to *678 preserve the family home until the day he died. The testimony of Mrs. McHale was particularly poignant on the number of calls he made to Bank of America, literally on his deathbed. Mr. McHale was not trying to flout his obligations to reaffirm the debt. He was trying to pay his creditor.
If the lender, like every other diligent creditor, timely had asked for the Court's help to compel Mr. McHale to sign a reaffirmation agreement when he was still alive, the request would have been granted. Debtors who state they want to retain property secured by a lien must either sign a reaffirmation agreement or redeem the property.[54] However, Christiana Trust or its predecessor did not make a timely request. They waited over four years after Mr. McHale died before filing their motion to reopen this case. Christiana Trust simply waited too late to ask. I cannot now compel Mr. McHale to do anything. He is dead and beyond the injunctive reach of this or any other court.
Nor is relief possible against Mr. McHale's estate. The law is clear that bankruptcy courts lack jurisdiction to intercede in non-bankruptcy probate and domestic actions. I appropriately lack jurisdiction to order Mr. McHale's estate to do anything. Bankruptcy courts may not interfere with the administration of a probate estate.[55] The Eleventh Circuit Court of Appeals has explained that it is inappropriate for bankruptcy courts to decide issues that are better left to specialized state courts.[56] "This idea has been extended to prevent [b]ankruptcy [c]ourts from deciding issues [that] should be decided by a state probate court."[57] The issue then is whether Christiana Trust has shown good cause why they are entitled to reopen this case to get relief against Mrs. McHale as the surviving widow.
No Relief is Justified against Mrs. McHale
Mrs. McHale contends she has valid defenses to the pending foreclosure action prosecuted by Christiana Trust. Although she may or may not succeed, I cannot find any reason to compel her stop raising these defenses. Mrs. McHale never signed the promissory note payable to Bank of America. She was never personally liable to the lender and was never required to sign any reaffirmation agreement.
Moreover, just because she and her husband filed this joint bankruptcy case, she never assumed liability for her husband's debts. Section 302(a) of the Bankruptcy Code allows a married couple to file a joint petition.[58] When a joint petition is filed, Federal Rule of Bankruptcy Procedure 1015(b) provides that the Court may jointly administer a married couple's bankruptcy estates.[59] Local Rule 1015-1 provides if a married couple files a joint petition, joint administration happens automatically without court order. When a case is jointly *679 administered, " 'the estate of each debtor remains separate and distinct.' "[60] So, while this was a jointly administered bankruptcy case, Mr. and Mrs. McHale retained separate and distinct bankruptcy estates. Mrs. McHale did not assume personal liability on the promissory note due to Bank of America simply because she filed a joint bankruptcy petition with her husband.
And, even if another court determines that the principles articulated in Taylor and Failla somehow apply to Mrs. McHale's situation, I would find that no relief is justified. First, the circumstances now are significantly different than when the bankruptcy was pending. During the bankruptcy case, Mr. McHale was current on his mortgage payments. The lender accepted all of these payments. No default had occurred. No foreclosure was pending or needed.
After the bankruptcy ended, everything changed. Mr. McHale was terminally ill. He lost his income. The lender modified the loan with Mr. McHale. The lender also continued to accept payments under the loan modification for ten months. They only refused these payments when Mr. McHale died. The lender waited two years to file a foreclosure action against Mrs. McHale and dismissed it because they could not prove their case. The lender then filed a second foreclosure action and has sought at least three continuances. Whatever debt was due in the bankruptcy case changed significantly post-bankruptcy due to the actions of both Mr. McHale and the lender. Any claim held by the lender or any defenses held by Mrs. McHale are dramatically different seven years later. Too much has changed to simply require Mrs. McHale to surrender the home because her husband failed to sign a reaffirmation agreement during the bankruptcy case.
Second, the Court critically questions the propriety of the Creditor's actions. They could have asked for this Court to compel Mr. McHale to execute the reaffirmation agreement when he was alive. The stipulated facts indicate that the lender voluntarily dismissed its first foreclosure action and that they have repeatedly sought continuances in the second foreclosure action, waiting six years to ask the Bankruptcy Court to reopen this case. Mrs. McHale contends she has valid defenses to the foreclosure and that the lender cannot succeed. She very much desires her "day in court." After listening carefully to the testimony and weighing the evidence, I believe Mrs. McHale's concerns are valid, although I render no opinion as to whether any of Mrs. McHale's defenses are legitimate.
Christiana Trust now is asking this Court to order Mrs. McHale to stop pursuing her foreclosure defenses primarily to shortcut their litigation so they do not have to actually prove their case in state court. The arsenal of enforcement powers granted Bankruptcy Courts under § 105 was never intended to reward such creditors trying to game the system. The spirit of our Bankruptcy Code promises honest debtors a "fresh start." Creditors are not entitled to use the extraordinary powers bestowed by § 105 as a cudgel to avoid having to actually prove their case in state court. As Bankruptcy Judge Colton held in Ayala , " Failla should not be viewed as carte blanche for post-bankruptcy lender misconduct. Instead, each case must be evaluated on its own facts, and careful consideration should be exercised before *680 issuing any order the impacts pending state court proceedings."[61]
Third, Christiana Trust was not injured by Mr. McHale's failure to sign a reaffirmation agreement. The remedy sought by the lender, requiring Mrs. McHale to forfeit her foreclosure defenses, is not a logical or justified punishment to impose on Mrs. McHale. Let's assume Mr. McHale did perform his intention under § 521, and he signed a reaffirmation agreement with the lender during his bankruptcy. If he had, the post-bankruptcy events would have occurred exactly like they did regardless of whether a reaffirmation agreement was signed or not. Mr. McHale still would have defaulted on his payments post-bankruptcy, and the lender still would have filed a foreclosure action and still would have had to prove its case. So, the fact that a reaffirmation agreement was or was not signed is absolutely irrelevant to Mrs. McHale's current situation. Christiana Trust is not prejudiced. The lender is trying to get a "pass" on proving their case in state court, not seriously arguing that Mr. McHale's failure to sign a reaffirmation agreement damaged them.
Christiana Trust relies heavily and mistakenly on a recent per curiam and unpublished decision of the Eleventh Circuit Court of Appeals- Jones v. Citimortgage .[62] In Jones , the debtor, acting pro se , sued his mortgage lender and a state court judge in the United States District Court for the Northern District of Georgia. The procedural history is convoluted and confused. It is unclear if the Debtor intended to reaffirm, redeem, or surrender his home to Citimortgage during his bankruptcy.[63] But, we know he did sue Citimortgage in federal district court in a 58 count complaint asserting various civil rights claims under 42 U.S.C. §§ 1983 and 1985, the Fair Housing Act, a violation of his bankruptcy discharge, the Fair Credit Reporting Act, and various state statutes.[64] The Eleventh Circuit dismissed the majority of Mr. Jones's complaint with prejudice but sent the count relating to the discharge violation back to the appropriate Bankruptcy Court. In dicta , the Appellate Court cited In re Taylor[65] and In re Failla[66] for the established proposition that debtors must redeem or reaffirm their secured debts if they want to retain property.
But, the Eleventh Circuit in Jones is utterly silent as to what is the proper remedy under § 105 of the Bankruptcy Code when a debtor fails to perform their stated intention, the issue in this case. Jones merely restates established law and imposes no new nuance with one possible exception. The Eleventh Circuit in Jones confirmed that a debtor who arguably failed to perform his intent under § 521(a)(2) still was entitled to return to the bankruptcy court to seek relief against his lender for violating his discharge.[67] Significantly, *681 the Eleventh Circuit opined that, even though the Debtor failed to surrender, reaffirm, or redeem, he could continue "to maintain mortgage payments on a principal residence after discharge without reaffirming the debt, and a creditor can take such payments rather than pursue an in rem foreclosure" under § 524(j) of the Bankruptcy Code.[68] So, at least according to the Eleventh Circuit in this unpublished opinion, if a creditor voluntarily accepts payments post-bankruptcy, they may lessen or lose their ability to force a debtor to comply with his obligations under § 521(a)(2). The take-away lesson from Jones , if any, is that creditors who accept post-bankruptcy payments from debtors who do not sign reaffirmation agreements may lose their ability to force compliance with § 521 of the Bankruptcy Code when the debtor later defaults post-bankruptcy.
Christiana Trust has failed to establish cause to reopen this case. No relief is possible against Mr. McHale because he is dead and beyond the injunctive power of this or any other court. No relief is possible against Mr. McHale's estate because this Court lacks jurisdiction.
And, no relief is justified against Mrs. McHale. She is not now and never was personally liable to the lender. Mr. McHale's failure to sign or to not sign a reaffirmation agreement caused no prejudice to the lender. They still would have to pursue a foreclosure action. And, given the change in circumstances due to the passage of time, Mr. McHale's death, the lender's post-bankruptcy modification of the loan, Mrs. McHale's current foreclosure defenses necessarily are different from those during the bankruptcy when the Debtors were current on their payments. The only appropriate result in this case is to allow the Florida State Court to continue its in rem foreclosure action to conclusion. The only limitation is that Mrs. McHale, if she ever had any liability to the lender given she never signed the promissory note, certainly has no in personam liability to Christiana Trust or its predecessors after her bankruptcy discharge.
Accordingly, it is ORDERED that the Motion to Reopen Case and to Compel Surrender is DENIED .

Christiana Trust is a Division of Wilmington Savings Fund Society, FSB, and acts as Trustee for the Normandy Mortgage Loan Trust, Series 2013-4. Christiana Trust asserts Bank of America assigned its interest in a note and mortgage encumbering the Debtors' homestead to the Normandy Mortgage Loan Trust, Series 2013-4.

Doc. Nos. 20, 35, 39, 40. Debtor opposes this motion. Doc. Nos. 32, 36.

Doc. No. 1.

Doc. No. 15. The Court closed the case on September 22, 2011. Doc. No. 73, ¶ 10.

The home is located at 8053 Bracken Lane, Melbourne, Florida. Doc. No. 73, ¶ 2.

Doc. No. 1, p. 41. Countrywide Bank, FSB originated the mortgage loan and later transferred its interest to Bank of America. In turn, Bank of America later allegedly assigned its interests to the Christiana Trust. Doc. No. 73, ¶¶ 6, 16, and 19.

Doc. No. 73, Exh. B. Susan McHale signed the related mortgage but not the promissory note. Doc. No. 73, Exh. C.

Creditor's Exh. No. 6. The offer stated: "BAC Home Loans Servicing, LP was recently notified of the [Debtors'] bankruptcy. Even though your client has entered the bankruptcy process, we want you to know there are home retention programs that may be available for your client. BAC Home Loans Servicing, LP offers a variety of home retention programs to borrowers in and out of bankruptcy, both before and after discharge." Id. at p. 2.

Doc. No. 73, ¶ 9.

Doc. No. 73, ¶¶ 7, 11, 12, 13.

Doc. No. 73, ¶ 13.

Doc. No. 73, ¶¶ 7 and 11.

Creditor's Exh. No. 7. On November 6, 2010, Bank of America sent Mr. McHale a letter asking for financial information needed to support his request to modify the existing mortgage. See also Creditor's Exhs. 18 and 19 (a letter from Mr. McHale outlining additional monthly expenses and a fax from Mr. McHale with information requested).

Doc. No. 73, ¶ 12, Exh. D; Debtor's Exh. No. 23. The offer only required Mr. McHale to make three payments before receiving a permanent loan modification. Instead, he made ten payments and never received the promised permanent loan modification.

Doc. No. 73, ¶ 13, Exh. D.

Doc. No. 73, ¶ 13.

Doc. No. 73, ¶ 14.

Doc. No. 73, ¶ 15.

The Court notes that Christiana Trust's attorney represented his client recently has worked with Mrs. McHale to resolve this dispute as ordered by this Court. The settlement discussions were not successful.

Doc. No. 73, ¶¶ 17 and 18.

Doc. No. 73, ¶ 20; Debtor's Exh. 17.

Doc. No. 73, ¶ 21; Debtor's Exh. 18.

Debtor's Exhs. 19, 20, and 21. The state court eventually abated the second foreclosure action until this Court rules on the pending motion to reopen. Debtor's Exh. 22.

Doc. No. 20 and Doc. No. 73, ¶ 24.

References to the Bankruptcy Code refer to 11 U.S.C. § 101 et seq.

Section 350 of the Bankruptcy Code provides: "(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case. (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

In re Winburn , 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996) (The moving party has the burden of proof to demonstrate cause sufficient to reopen a bankruptcy case.)

Mohorne v. Beal Bank, S.S.B. , 419 B.R. 488, 493 (S.D. Fla. 2009).

Apex Oil Co. Inc. v. Sparks (In re Apex Oil Co., Inc.) , 406 F.3d 538, 542 (8th Cir. 2005) ; Matter of Shondel , 950 F.2d 1301, 1304 (7th Cir. 1991).

In re Apex Oil Co., Inc. , 406 F.3d at 542.

Debtors make this election in the Statement of Intentions filed in every Chapter 7 bankruptcy case. Section 521(a)(2)(A) provides: "[I]f an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate-(A) ...[the debtor] shall file...a statement of his intention with respect to the retention or surrender of such property and...that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."

Taylor v. Age Federal Credit Union (In re Taylor) , 3 F.3d 1512 (11th Cir. 1993).

Id. at 1516.

Both Debtors signed the Statement of Intentions indicating they wanted to reaffirm the debt with Bank of America; however, only Mr. McHale was obligated on the underlying note. Mrs. McHale had no debt obligation to reaffirm. Therefore, only Mr. McHale was required to sign any reaffirmation agreement. See e.g. Debtor's Exh. 11 (correspondence from Bank of America to Mr. McHale about his home loan); Creditor's Exhs. 19 (correspondence from Bank of America to Mr. McHale and Mr. McHale's responses), 18 (correspondence from Mr. McHale to Bank of America with "Request for Modification and Affidavit" form), and 7 (correspondence from Bank of America to Mr. McHale about home loan needs).

In re Calabrese , 353 B.R. 925, 925 (Bankr. M.D. Fla. 2006).

Id.

In re French , 185 B.R. 910, 912 (Bankr. M.D. Fla. 1995) (citing Taylor , 3 F.3d at 1514, n. 2 ).

In re Pitts , 462 B.R. 844, 845 (Bankr. M.D. Fla. 2012).

Id.

Id. at 847.

Id. at 849.

Id.

In re Taylor , 3 F.3d at 1516.

The Court did not find the testimony of the lender's representative credible. Mr. Nick Fox testified as a factual witness on behalf of Selene Finance, the servicer for Christiana Trust since June 1, 2014. Mr. Fox cavalierly stated that lenders typically wait for bankrupt debtors to call the lender to ask for a reaffirmation agreement, not vice versa. He provided no reliable data to support this expert conclusion, and he never sought qualification as an expert. The Court concludes that Mr. Fox's unsupported expert testimony was an attempt by Christiana Trust to impose a duty on Mr. McHale, i.e., an obligation to call the lender and request a reaffirmation agreement, which is not supported by competent expert testimony. Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Failla v. Citibank, N.A. (In re Failla), 838 F.3d 1170 (11th Cir. 2016).

Id. at 1173-74.

Id.

Id. at 1175-77.

Id. at 1179 (citing Marrama v. Citizens Bank of Mass. , 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) ).

Id. at 1179.

In re Plummer , 513 B.R. 135, 142 (Bank. M.D. Fla. 2014) ; In re Sullivan-Anderson , 307 B.R. 726, 729 (Bankr. M.D. Fla. 2003) ("[N]o set remedy exists for nonperformance of a debtor's obligations under Section 521.").

Section 105 of the Bankruptcy Code allows bankruptcy courts to fashion flexible remedies to implement bankruptcy laws. For example, in some cases, courts will dismiss a case thereby denying the debtor a discharge or merely lift the automatic stay. See, e.g., In re Scott , No. 14-38122-BKC-RBR, 2017 WL 2802714, at *2 (Bankr. S.D. Fla. June 26, 2017) (dismissing a debtor's case under § 105 with a prejudice period of one year and without a discharge as a sanction); In re Brown , No. 17-10021-KKS, 2017 WL 3493101, at *12 (Bankr. N.D. Fla. Apr. 19, 2017) (using § 105 to dismiss a debtor's case with prejudice and grant prospective relief against a property to "prevent a further abuse of process by the party who master-minded" an abusive scheme).

The general rule is that debtors who declare an intent to surrender a home in a bankruptcy case forfeit their defenses in pending state court foreclosure proceedings. In re Failla , 838 F.3d at 1179. Exceptions, however, exist to this general rule. See, e.g., In re Kurzban , No. 09-30656, 2017 WL 3141915, at *1 (Bankr. S.D. Fla. July 24, 2017) (Creditor filed two foreclosure actions, attempted to modify the debt, and waited seven years to ask the Bankruptcy Court to compel surrender. Chief Bankruptcy Judge Isicoff held, "A debtor's decision to surrender may be binding in a foreclosure action pending, or ripe for filing, at the time of the bankruptcy case in which the intent to surrender is made, but it certainly is not binding in a subsequent foreclosure action, which action, under applicable non-bankruptcy law, can only relate to defaults that did not even exist at the time the decision to surrender was made."); In re Ayala , 568 B.R. 870 (Bankr. M.D. Fla. 2017) (Creditor accepted mortgage payments post-petition and waited five years to ask the Bankruptcy Court to force the debtors to stop contesting the pending foreclosure action.); In re Guerra , 544 B.R. 707 (Bankr. M.D. Fla. 2016) (In a case decided shortly before Failla , Chief Bankruptcy Judge Williamson held that the state court was better able to resolve the dispute when a creditor allowed years to pass between the time a debtor indicates an intent to surrender and the time the debtor opposes a state court foreclosure.).

In re Failla , 838 F.3d at 1175 ; In re Taylor , 3 F.3d at 1516.

Tominaga v. Sherwood Investments [Overseas] Ltd. (In re Tominaga) , 325 B.R. 653, 656 (Bankr. M.D. Fla. 2005) ; See also In re Kelley , No. 3:05-BK-13031-GLP, 2006 WL 3922104, at *2 (Bankr. M.D. Fla. Sept. 25, 2006) ("The Supreme Court recently held that federal courts have the jurisdiction to determine [some estate issues] 'so long as the federal court does not interfere with the probate proceedings.' ") (quoting Marshall v. Marshall , 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006) ).

In re Thurman Const., Inc. , 189 B.R. 1004, 1016 (Bankr. M.D. Fla. 1995) (citing Carver v. Carver , 954 F.2d 1573 (11th Cir. 1992) ).

Id.

11 U.S.C. § 302(a).

Fed. R. Bankr. P. 1015(b).

In re Morrison , 403 B.R. 895, 901 (Bankr. M.D. Fla. 2009) (quoting In re Payne , No. 04-52124C-7W, 2004 WL 2757907, at *3 (Bankr. M.D.N.C. Nov. 15, 2004) ).

In re Ayala , 568 B.R. at 873.

Jones v. CitiMortgage, Inc. , 666 Fed. Appx. 766, 770 (11th Cir. 2016).

The Eleventh Circuit noted: "While Citimortgage suggests that Jones initially may have intended to reaffirm the debt, Jones does not allege that a reaffirmation agreement was ever reached." Id. at 769.

Id. at 771-72.

Id. at 769-70, 776-77 (citing In re Taylor , 3 F.3d at 1512, 1514-17 ).

Id. at 769-70, 776-77 (citing In re Failla , 838 F.3d at 1174-75, 1777 ).

The record is unclear whether Mr. Jones intended to reaffirm or surrender his home during his bankruptcy. But, it is clear that he did neither act, and the lender pursued two post-bankruptcy foreclosure actions against him. The Eleventh Circuit eventually dismissed most of the counts in the Debtor's pro se complaint with prejudice but remanded the count alleging a violation of the discharge injunction to the appropriate bankruptcy court for resolution.

Jones , 666 Fed. App'x at 770 (emphasis added). See also , Bank of America, N.A. v. Rodriguez , 558 B.R. 945, 951 (S.D. Fla. 2016) ("Where the debtor has not reaffirmed her debt, redeemed her property or paid her mortgage , she has one option, which is to surrender the property.") (emphasis added). Here, Mr. McHale timely paid his mortgage. As such, automatic surrender is not merited. See also, In re Steinberg , 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011) ("While the debtor cannot force the creditor to accept a non-recourse obligation, the creditor may determine that it prefers to accept a non-recourse obligation so long as the debtor continued to make periodic payments on the debt. Section 524(j) provides the creditor with that option.")